### THE "ABBOTSFORD."

1. Under the act of Feb. 16, 1875, which took effect May 1 of that year, entitled "An Act to facilitate the disposition of cases in the Supreme Court of the United States, and for other purposes" (18 Stat. 315), the finding of facts by the Circuit Court in admiralty cases is conclusive; and only rulings upon questions of law can be reviewed by bill of exceptions.

2. Where words in an act limiting the reviewing power of this court, in cases where the facts have been found below, "to a determination of the questions of law arising upon the record and to the rulings of the court excepted to," have acquired, through judicial interpretation, a definite meaning, by which that power, on exceptions, is confined to questions of law, they will, when found in a subsequent act, be presumed to be used in the same sense, unless a contrary intention appears from the act.

3. Two schooners were sailing down the Delaware River, when a steamer proceeding in the same direction, at the rate of eight or nine miles an hour, was, in daytime, approaching near enough to them to render it necessary to make calculations to keep out of their way. They were in parallel courses, not far apart, beating upon their starboard tack, and nearing the Jersey bank. Instead of going outside of them, she, without seasonably slackening her speed, attempted to pass between them, and came into collision with and sunk the one nearer the bank, as the latter, having run her starboard tack and come about on her port tack, tacked again before she was under full headway to avoid colliding with the other schooner, which was still properly on her starboard tack. *Held,* that the steamer was liable.

APPEAL from the Circuit Court of the United States for the Eastern District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. Morton P. Henry* for the " Abbotsford."

*Mr. Henry Flanders* and *Mr. James B. Roney, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court for the Eastern District of Pennsylvania, in an admiralty cause on the instance side of the court, rendered April 13, 1876. The case was up for consideration once before at the present term, and remanded for a finding of the facts and the conclusions of law required by the " act to facilitate the disposition of cases in the Supreme Court of the United States, and for other purposes" (18 Stat. 315), which went into effect May 1, 1875. The Circuit Court has since complied with the requirements

of that statute, and made its return, stating the facts and the conclusions of law separately. Accompanying this return is a bill of exceptions, which is now a part of the record. This bill of exceptions shows that each of the parties presented to the court requests for findings of fact upon the evidence, and the exceptions are to the effect that the court neglected to find certain facts claimed by the appellant to have been proved. The evidence relied upon to prove what was claimed and not found is set out at length.

The first question to be determined is as to the operation and effect of the bill of exceptions. The act of 1875 provides "that the circuit courts of the United States, in deciding causes of admiralty and maritime jurisdiction on the instance side of the court, shall find the facts and conclusions of law upon which it renders its judgments or decrees, and shall state the facts and conclusions of law separately. And in finding the facts, as before provided, said court may, upon the consent of the parties who shall have appeared and put any matter of fact in issue, and subject to such general rules in the premises as shall be made and provided from time to time, impanel a jury of not less than five and not more than twelve persons, to whom shall be submitted the issues of fact in such cause, under the direction of the court, as in cases at common law. And the finding of such jury, unless set aside for lawful cause, shall be entered of record, and stand as the finding of the court, upon which judgment shall be entered according to law. The review of the judgments and decrees entered upon such findings by the Supreme Court, upon appeal, shall be limited to a determination of the questions of law arising upon the record, and to such rulings of the Circuit Court, excepted to at the time, as may be presented by a bill of exceptions, prepared as in actions at law."

Under this statute we are clearly of the opinion that the finding of facts in the Circuit Court is conclusive, and that the only rulings which can be presented for review here by bill of exceptions are those made upon questions of law. Such has been the construction given by this court to statutes of a similar character in a long line of decisions, commencing soon after the court was organized. Thus, sect. 19 of the Judiciary Act of 1789 provided that it should "be the duty of the

Circuit Court, in causes in equity and of admiralty and maritime jurisdiction, to cause the facts on which they found their sentence or decree fully to appear upon the record, either from the pleadings and decree itself, or a state of the case agreed by the parties or their counsel, or if they disagree, by a stating of the case by the court." 1 Stat. 83. In *Wiscart* v. *Dauchy* (3 Dall. 324), decided in 1796, Chief Justice Ellsworth, speaking for the court in reference to the proper practice under this act, said : " If causes of equity or admiralty jurisdiction are removed hither, accompanied with a statement of facts, but without the evidence, it is well; and the statement is conclusive as to all the facts which it contains. This is unanimously the opinion of the court. If such causes are removed with a statement of the facts, and also with the evidence, still the statement is conclusive as to all the facts contained in it. This is the opinion of the court, but not unanimously." Soon afterwards the act of 1803 (2 Stat. 244), allowing appeals, was passed, which directed that, upon an appeal, " a transcript of the libel, bill, answer, depositions, and all other proceedings of what kind soever in the cause," should be transmitted to this court, and consequently the question did not again come up for consideration until after the " act to regulate the mode of practice in the courts of the United States for the district of Louisiana " (4 Stat. 62), passed May 26, 1824. Under the Louisiana practice, which was adopted by this act for the courts of the United States in that district, trials were allowed by the court without a jury, and almost immediately questions arose as to the manner in which such cases should be brought to this court for review by writ of error. There was much difficulty in reaching a settlement of the practice, but in *United States* v. *King* (7 How. 845), it was decided unanimously " that the decision of the Circuit Court upon the questions of fact must, like the finding of a jury, be regarded as conclusive; that the writ of error can bring up nothing but questions of law." Following this was the case of *Bond* v. *Brown* (12 id. 256), where Mr. Chief Justice Taney said : " And whether the fact was rightly decided or not according to the evidence is not open to inquiry in this court. The decision of the court below in this respect is as conclusive as the verdict of a jury when the case

is brought here by writ of error." Other cases to the same effect may be found. Such is now the settled law with reference to trials of issues of fact in Louisiana, when a review is sought in this court by writ of error.

In 1865 an act of Congress was passed (13 Stat. 501), which is as follows: —

"That issues of fact in civil cases in any circuit court of the United States may be tried and determined by the court without the intervention of a jury, whenever the parties, or their attorneys of record, file a stipulation in writing with the clerk waiving a jury. The finding of the court upon the facts, which finding may be either general or special, shall have the same effect as the verdict of a jury. The rulings of the court in the cause in the progress of the trial, when excepted to at the time, may be reviewed by the Supreme Court of the United States upon a writ of error, or upon appeal, provided the rulings be duly presented by bill of exceptions. When the finding is special, the review may also extend to the determination of the sufficiency of the facts found to support the judgment."

This statute has been reproduced in sects. 649 and 700 of the Revised Statutes, and under it we have universally held that a bill of exceptions cannot be used to bring up the evidence for a review of the findings of fact. The facts, as found and stated by the court below, are conclusive. The case stands here precisely the same as though they had been found by the verdict of a jury. *Norris* v. *Jackson*, 9 Wall. 125; *Basset* v. *United States*, id. 38; *Copelin* v. *Insurance Company*, id. 461; *Coddington* v. *Richardson*, 10 id. 516; *Miller* v. *Insurance Company*, 12 id. 295; *Insurance Company* v. *Folsom*, 18 id. 249; *Insurance Company* v. *Sea*, 21 id. 158; *Jennisons* v. *Leonard*, id. 302.

At the December Term, 1865, under the authority we have to prescribe rules by which appeals may be taken from the Court of Claims to this court, we provided that such appeals should be had on the transcript of the record, &c., below, and " a finding of the facts in the case by the said Court of Claims, and the conclusions of law on said facts, on which the court founds its judgment or decree. The finding of facts and conclusions of law to be stated separately, and certified to this court as part

of the record. The facts so found are to be the ultimate facts or propositions which the evidence shall establish, in the nature of a special verdict, and not the evidence on which these ultimate facts are founded." 3 Wall. vii. This rule was changed somewhat in form but not in substance, Oct. 12, 1873. 17 id. xvii. In the case of *De Groot* v. *United States* (5 id. 419), decided in 1866, we took occasion to say that the object of this rule was "to present in a simple form the questions of law which arose in the progress of the case, and which were decided adversely to the appellant. Only such statement of facts is intended to be brought to this court as may be necessary to enable it to decide upon the correctness of the propositions of law ruled by the Court of Claims, and that is to be presented in the shape of facts found by that court, to be established by the evidence, in such form as to raise the legal question decided by the court. It should not include the evidence in detail." This practice has always been strictly adhered to.

From this it is apparent that when the act of 1875 was passed, words in a statute limiting the power of this court in the review of cases where the facts had been found below "to a determination of the questions of law arising upon the record and to the rulings of the court excepted to," had acquired, through judicial interpretation, a well-understood legislative meaning, and that they confined our jurisdiction to the re-examination of questions of law alone. Having that meaning, therefore, it is to be presumed they were used in that sense in this instance, unless the contrary is in some way made to appear. So far from there being any manifestation of such a contrary intention, the reverse is very clearly indicated. Thus, the rulings of the court on which we are authorized to pass are such as may be presented by a bill of exceptions, prepared as in actions at law. It is an elementary principle in the common law that a bill of exceptions "is founded on a matter of law or a point of law arising out of a fact not denied." 1 Saund. Pl. and Evid. 640. "The only modes known to the common law to re-examine the facts are the granting of a new trial by the court where the issue is tried, or to which the record is properly returnable, or the award of a *venire de novo* by an appellate court

for some error of law which intervened in the proceedings."
*Parsons* v. *Bedford*, 3 Pet. 448.   By the Constitution, Amend.
VII., no fact tried by a jury can be otherwise re-examined in
any court of the United States than according to the rules of
the common law.   It follows that had this case been tried by
a jury it could not be re-examined on the facts in this court,
because under the rules of the common law a bill of exceptions
could not be used for that purpose.   The decision of a court
denying a new trial because the verdict of a jury is against the
evidence is not reviewable upon error in the courts of the
United States.   *Pomeroy's Lessee* v. *Bank of Indiana*, 1 Wall.
592.   Since, therefore, the bill of exceptions in this class of
cases is to be taken as in actions at law, it follows most unmis-
takably that only such rulings are to be presented by it for our
consideration as could properly be put into a bill of exceptions
on the trial of an action at law.

This intention is still further manifested in that part of the
act which provides for a trial by jury.   The trial is to be had
as at common law, and the finding of the jury on such a trial,
unless set aside for lawful cause, is to stand as the finding of
the court.   No distinction is made in respect to our power of
review between cases tried by a jury and those by the court ;
and if the trial is had by a jury, it is clear that the verdict was
intended to be conclusive upon us.

Taking the whole statute together, we think it clearly mani-
fests an intention on the part of Congress to relieve us from
the great labor of weighing and considering the mass of con-
flicting evidence which usually filled the records in this class
of cases.   There is no real injustice in this.   Parties to suits
in admiralty have now the right to two trials on questions of
fact, — once in the District Court, and again on appeal in the
Circuit Court.   There seems no good reason why they should
be entitled to a third trial here.   At law there is but one trial,
except by leave of the court in the exercise of its supervisory
power over verdicts, and in equity only one before an appeal
to this court.

Upon the facts as found the decree of the Circuit Court was
clearly right.   The schooners " Rosanna Rose " and " Gov. Bur-
ton " were beating down the Delaware River under sail, and the

"Abbotsford" was following them under steam at half-speed by her engine, which, with the tide, gave her a speed of eight or nine miles an hour. When the steamer had approached near enough to the schooners to render it necessary to make calculations to keep out of their way, the schooners were sailing on parallel courses, not far apart, on their starboard tacks, and nearing the Jersey side of the river. The "Rose" was to the eastward of the "Burton," and having run out her starboard tack by going as near as she could in safety to what is known as the Red Bank Shoal, she came about on her port tack. While on that tack, and before she had got under full headway, she was compelled to tack again to avoid a collision with the "Burton," still on the starboard tack and having the right of way. While engaged in this evolution, and being "in stays," she was run into by the steamer. The court finds that the tack of the "Rose" on the shoal was entirely proper, both for her own safety and in regard to the "Burton" and the steamer, as they were far enough away to allow her to do so with perfect safety. There was plenty of room for the steamer to pass to the westward of both the vessels, and if she had ported her wheel a point or half-point at any time within a distance of two miles, a collision would have been impossible. As it was, she undertook to pass between the schooners without any necessity for so doing, when it must have been apparent to any skilful navigator that the "Rose" was nearing the shoal, and would be compelled to come about and cross the bow of the steamer before she could get by on the course she was steering. In addition to this, there was the complication growing out of the proximity of the "Burton," entitled to keep on her starboard tack after the "Rose" must come about. Notwithstanding all these circumstances, the steamer held her course and speed until she had approached so close to the vessel that there was neither room nor time to overcome her momentum when she became involved in the necessary and proper movements of the "Rose" to keep out of the way of the "Burton." A prudent navigator would have avoided this danger by a change of course or a slackening of speed long before. The collision occurred between nine and ten o'clock in the morning, and there is no pretence that both schooners were not in full view from the steamer for a suffi-

cient time to enable her to make the necessary movement to keep out of their way. The collision was due alone to the fact that the steamer undertook to pass between the schooners when she should have gone outside of them.

*Decree affirmed.*