# EINSTEIN v. SAWHILL.

PATENT APPEALS; STATUTORY CONSTRUCTION; TRADE-MARKS.

1. An appeal does not lie to this court from a decision of the Commissioner of Patents in a controversy between rival applicants for the registration of a trade-mark; *construing* act of Congress of February 9, 1893, sec. 9.

2. There is no better criterion wherewith to ascertain the meaning of the terms used in a statute, than the statute itself, or other previous or similar statutes, in which the same legislative body has given expression to its purpose.

3. The right to a trade-mark is not created by the Federal Government, and does not emanate from it; and all that Congress has sought to do in legislating upon the subject of trade-marks, is to provide a recording act of a very limited character, the better to evidence the ownership of the right.

No. 9. Patent Appeals. Submitted November 15, 1893.—Decided December 4, 1893.

HEARING on an appeal from a decision of the Commissioner of Patents, in a controversy between rival applicants for the registration of a trade-mark. *Appeal dismissed.*

THE CASE is sufficiently stated in the opinion.

*Mr. Levin H. Campbell* for the Commissioner of Patents, who appeared as *amicus curiæ*.

*Messrs. Pennie & Goldsborough* and *Messrs. Kay, Totten & Cooke* for the appellant.

1. The word "interference," as used in the act of Congress of February 9, 1893, sec. 9, giving this court jurisdiction to hear and determine appeals from decisions of the Commissioner of Patents in interference cases, is a plain English word having a known meaning, and is not a technical term, nor is it used technically in that act. The word "interfere" means primarily to strike between, being derived from the words *inter* (between) and *ferire* (to strike). Its meaning is to clash, to conflict, to be opposed to each other, to intermeddle, etc. The word "interference" means the act of

interfering, a clashing, an opposition (Webster's Dict.). There can be no doubt that this controversy is clearly included under the terms, and whether it be called a dispute, as found in Sec. 3 of the trade-mark act of 1881, or an interference, makes no difference, provided it is the thing meant by that word. This is certainly a dispute, and as such a clashing of interests, a striking between as to the subject matter for which each party asks registration by the Patent Office.

It matters not whether the subject matter in controversy is an invention, or the right to registration of a trade-mark. Both things are to be settled by means of evidence taken, and submitted to the proper tribunal in the Patent Office, and decided on such evidence in the same way as an equity proceeding would be in the courts. One is as much an interference as the other, and this tribunal should look for things and not names.

Under the Revised Statutes and Patent Office rules the Commissioner is authorized to decide interferences relating to patents. Under the trade-mark act of 1881 and the Patent Office rules, the Commissioner is authorized to decide disputes or interferences as to trade-marks. Section 9 of the act of 1893 gives right of appeal to this tribunal to " any party aggrieved by the decision of the Commissioner of Patents in any interference case." The right extends to trade-marks as well as interference cases.

Under the first trade-mark act passed in 1870, this question came up and was decided by the Commissioner, the Secretary of the Interior, and the Courts, and although the trade-mark act of 1870 contained no express provision for settlement of disputes or interfering claims, it was uniformly held as providing for the same, and such proceedings were uniformly considered as interferences. In these decisions is found the origin of the term interference and its application to trade-mark cases. For that reason a careful consideration of the same by this court is, therefore, respectfully requested. See *Lantz Bros.* v. *Shultz & Co.*, C. D., 1876, p. 90; *McElwee* v. *Blackwell*, Id., 1878, p. 152; *Hoosier*

*Drill Co.* v. *Ingels,* Id., 1878, p. 115; *Duke* v. *Green,* Id., 1879, p. 297; *Hanford* v. *Westcott,* Id., 1879, p. 649.

2. The Commissioners of Patents have established or upheld rules under the provisions of the law calling the present proceedings interferences, and providing for the prosecution of the same in exactly the same way as in interferences in regard to inventions. They themselves have established the practice, have compelled applicants to conform thereto or lose all opportunity for registration, have compelled them to take testimony to prove their claims; and this practice has stood for years. So far, therefore, as the Commissioner of Patents is concerned, it is respectfully submitted he is estopped from raising the point. The Commissioner declared this interference. Every paper throughout the case is entitled in interference. The lower tribunal has considered it an interference case. On appeal to the Commissioner he has considered it as the same. Is he not estopped in this particular case from raising any such point?

3. Can the patent statute be invoked to show that there is no jurisdiction? The Revised Statutes were passed in 1874, and the trade-mark act was passed in 1881, subsequent to the Revised Statutes, and that trade-mark act gave the Commissioner power to decide just such a dispute as this interference. The prior act cannot control the construction of the subsequent act, and that no matter what the provisions of the previous case were, if the trade-mark act of 1881 gives the authority to the Commissioner to decide this dispute or interference, the provisions of a prior act cannot control it.

Further, the parts of the Revised Statutes referred to relate entirely to patents, and were not intended to relate to trade-marks. For this reason they cannot be invoked to control a separate act relating to another subject, namely, to the settlement in the Patent Office of disputes or interferences as to trade-marks.

4. The only point which requires further discussion, is that if this court has power to review on appeal the decisions of the Commissioner in interferences as

to trade-marks, there is the anomaly that it cannot review decisions of the Commissioner in *ex parte* trade-mark decisions. There is no reason why this court should not take jurisdiction if the provisions of the act give it. The same anomaly existed for years in connection with the Supreme Court of the District, which had power to review decisions of the Commissioner in *ex parte* proceedings as to patents, though it had no power to review such decisions in interference cases. The court is justified in taking jurisdiction which is plainly given to it by the statutes, no matter whether such an anomaly exists or not.

The wording of the act constituting this court is clear, giving it power to review any decisions of the Commissioner in any interference case. This is an interference case which has been decided by the Commissioner, and it is, therefore, proper for the court to review the same, even though it may not have jurisdiction in *ex parte* trade-mark cases.

*Mr. Louis Bagger* and *Mr. J. M. Shields* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in a dispute between two rival applicants for the registration of a trade-mark. It seems to be unnecessary to state the facts of the controversy or the claims of the respective contestants, for the reason that we are of opinion that we have no jurisdiction in this class of cases. The ninth section of the act of Congress of February 9, 1893, which created this court, gives to it the determination of appeals from the decisions of the Commissioner of Patents, then and previously thereto vested in the Supreme Court of the District of Columbia, in pursuance of Section 780 of the Revised Statutes of the United States for the District of Columbia; and in addition thereto the determination of appeals from the decision of the same Commissioner " *in any interference case.*" And it is under this latter clause that it is sought to sustain the present appeal.

The first clause of the section refers to Section 780 of the Revised Statutes of the United States for the District of Columbia; and that section, which is part of the act that defines the jurisdiction of the Supreme Court of the District of Columbia, provides that that court shall hear and determine appeals from the decisions of the Commissioner of Patents in accordance with the provisions of Sections 4911 to 4915, both inclusive, of the general Revised Statutes of the United States. And these Sections 4911 to 4915 of the Revised Statutes, to which we are thus remitted, and which constitute part of Chapter one, of Title 60, of the Revision, treating of the subject of " Patents, Trade Marks and Copyrights," provide that any party dissatisfied with the decision of the Commissioner of Patents, except a party to an interference, may appeal from such decision to the Supreme Court of the District of Columbia. In the chapter, two classes of cases are distinguished:   1st. Applications for patents or for the reissue of patents rejected; 2d. Interference cases, that is, cases of contests between rival applicants, or an applicant and a prior patentee. For the first of these two classes the Revised Statutes provided an appeal from the decision of the Commissioner; for the second class no such appeal was allowed.   The effect of the act of Congress of February 9, 1893, was to put both classes on the same basis with regard to appeals and to authorize and allow appeals in interference cases as well as in cases of refusal of the Commissioner to grant a patent.

The appellant in the case now before us claims that his case is one of interference; that it is so called and treated as such in the Patent Office; and that, therefore, this court has jurisdiction of it under the second clause of the ninth section of the act of February 9, 1893.   A brief retrospect of the legislation on the subject may serve to throw some light on the question thus raised.

In the act of Congress of July 4, 1836 (5 Stat., 117), which was the first enactment that provided for a thorough organization of our patent system and of the Patent Office on its

present basis, provision was made for the creation of a temporary board of appeals, whenever and as it should be needed from time to time, to hear and determine appeals from the decisions of the Commissioner of Patents, and such appeals were expressly authorized, both in cases of refusal by the Commissioner to grant patents, and in cases of interference between conflicting claimants for patents. And it will be noticed that the term *interference* is here used in its technical sense of a contest between rival applicants for a patent, or between an applicant and a prior patentee.

By an act of March 3, 1839 (5 Stat., 353), the board of appeals provided for by the act of 1836 was dispensed with, and it was provided that appeals might be taken in all cases from the decision of the Commissioner of Patents to the chief justice of the then existing circuit court of the District of Columbia. And in the act the two classes of cases were specified, and the term *interference* was used in its technical sense.

By an act of August 30, 1852 (10 Stat., 75), the jurisdiction to hear these appeals was conferred upon the several associate justices of the circuit court equally with the chief justice. And thus the matter stood until the abolition of the circuit court and the establishment of the Supreme Court of the District of Columbia by the act of Congress of March 3, 1862 (12 Stat., 763).

By this last mentioned act (March 3, 1862), the jurisdiction of the circuit court was transferred to the new court created by the act; and the powers possessed and the jurisdiction exercised by the justices of the old court severally were transferred to the justices of the newly created tribunal. And in pursuance of this act the chief justice and associate justices of the Supreme Court of the District of Columbia, from the year 1863 to the year 1870, sat in appeals from decisions of the Commissioner of Patents in both of the specified classes of cases.

By an act of Congress of July 8, 1870, entitled " An act to revise, consolidate and amend the statutes relating to patents

and copyrights" (16 Stat., 198), and which was intended to be a substitute for all the then existing legislation on the subject, a distinction was made for the first time in the matter of appeals between decisions of the Commissioner refusing to grant patents and decisions in interference cases. It was provided that from the former class appeals might be taken to the Supreme Court of the District of Columbia in General Term; but for the latter class there was no provision for appeal. On the contrary they were specially excepted. Section 48 of the act provided:

"That if such party, except a party to an interference, is dissatisfied with the decision of the Commissioner, he may appeal to the Supreme Court of the District of Columbia, sitting in banc."

In this act of July 8, 1870, for the first time also in our history, Congress assumed to legislate on the subject of trade-marks; and the sections of the act numbered from 76 to 84, both inclusive, sought to provide for the protection of trade-marks and their registration in the Patent Office, the preceding sections being devoted to patents, and the succeeding sections to copyrights. It will be noticed that, in this act, while provision was made for appeals from the decisions of the Commissioner of Patents in patent cases, as heretofore stated, there was no attempt to provide for any appeal in controversies arising in regard to trade-mark cases. Indeed, there was no attempt even made for the determination of controversies at all in this matter, if there should happen to be rival applicants for registration. The whole of this part of the act, however, relating to trade-marks was declared unconstitutional, and consequently null and void, by the Supreme Court of the United States in the so-called "Trade-mark Cases" (100 U. S., 82), decided by that court at its October term of 1879. In the meantime, the act had gone into the Revised Statutes of the United States, as chapter 60, already mentioned.

Subsequently to the decision of the Supreme Court of the United States in the trade-mark cases, Congress again un-

dertook to legislate on the subject of trade-marks within the constitutional limitations defined by the Supreme Court, and passed the act of March 3, 1881, entitled " An act to authorize the registration of trade-marks and to protect the same," (21 Stat., 502), by which " owners of trade-marks used in commerce with foreign nations, or with the Indian tribes," might obtain registration of such trade-marks.    In the third section of this act there is a clause as follows:

" In an application for registration the Commissioner of Patents shall decide the presumptive lawfulness of claim to the alleged trade-mark; and in any dispute between an applicant and a previous registrant, or between applicants, he shall follow, as far as the same may be applicable, the practice of courts of equity of the United States in analogous cases."

No provision is made for appeals from the decision of the Commissioner in any case; and it is not claimed that there was under this act any right of appeal.

This was the condition of the law when the act of Congress of February 9, 1893, was passed which created our court, and gave the right of appeal to it from the decision of the Commissioner of Patents, as already recited.    The question before us for determination is, whether the right of appeal so given included cases of dispute between rival applicants for registration of trade-marks.

We are very clearly of opinion that the " interference cases," in which appeals are authorized by the act of February 9, 1893, are cases of the same character as those mentioned by the same designation in previous legislation.    We are of opinion that the term *interference*, which is evidently to be taken in its technical and not in its ordinary sense, was used in the latest act in the same sense and with the same scope of meaning as in all the previous statutes in which the word is found, and not in any modified or different sense in which it may have been more recently used in the Patent Office.    There is no better criterion wherewith to ascertain the meaning of terms used in a statute than the statute itself,

or other previous or similar statutes, in which the same legislative body has given expression to its purpose. *The "Abbotsford,"* 98 U. S., 440; *Minor* v. *Mechanics' Bank of Alexandria*, 1 Pet. 46; *Claflin* v. *Commonwealth Insurance Co.*, 110 U. S., 81.

In all the statutes enacted prior to 1893 it is true beyond any question that the term *interference* was used solely and exclusively to designate a controversy between two or more rival applicants for a patent for a new and useful invention in the arts. And there is no reason to suppose, upon the face of the legislation itself, that Congress in its latest utterance intended anything different in the use of the word from the purpose of all its previous legislation. It is no answer to this that, prior at least to the act of March 3, 1881, Congress had no occasion to use the term in any other sense than that indicated; and that the word *dispute* used in the act of 1881, is the equivalent of the word *interference* used in the previous enactments. Words, it is true, are not things; and we would greatly regret to deny a substantial right, if such should be the result merely of a difference of phraseology. But such is not the result in this case.

While it seems quite probable that Congress studiously avoided the use of the term *interference* in the act of 1881, and adopted the term of *dispute* for the express purpose of distinguishing the matter of trade-marks from the matter of patents, no great reliance need be placed on this verbal distinction. The important fact is that the two subjects of legislation are radically different, and justify a different course of procedure in regard to them.

Patent rights are practically the creation of the Federal Constitution, and of Federal legislation based upon it. Hence it is important that the Federal Government should determine, not only by the administrative processes of the Patent Office, but likewise by judicial investigation and review at as early a stage as possible, whether such rights actually exist and to which of rival contestants they actually appertain. On the other hand, if the subject of trade-marks

is at all within the scope of Congressional legislation, even under the modified form of the act of 1881, it is plain that no such legislation can oust the States, and the State tribunals of their general jurisdiction of that subject. Such controversy as may be carried on in the Patent Office under the act of 1881 is controversy as to the evidences of the right, not as to the right itself. The right is not created by the Federal government, and does not emanate from it, as do patent rights; and all that Congress has sought to do is to provide a recording act of a very limited character, the better to evidence the ownership of the right. There is, therefore, a very great difference in the relative value and importance of patents for new and useful inventions and the scarcely more than ministerial business of the registration of trademarks; and there is good reason why Congress should have authorized judicial action by way of appeal in reference to the former, and denied it with regard to the latter.

We are, therefore, justified in concluding that, when Congress provided, in the act of 1893, for appeals in interference cases, it was their intention to provide for such cases as had always been known and designated as interference cases, and no others. Indeed, it would be a most unaccountable anomaly if we should hold differently. For, if the construction contended for by the appellant should prevail, we would have the very peculiar arrangement that appeals would not be allowed from decisions of the Commissioner refusing to register trade-marks, and yet would lie in disputed or controverted cases. And the result might well be that, after we had decided in favor of one of the contestants, the Commissioner might even then refuse to register the trade-mark for the applicant whom we would regard as entitled, and from his refusal there would be no appeal. The reverse of this was the policy of Congress for upwards of twenty years, between 1870 and 1893, in regard to patents. And why the minor right in the matter of trade-marks should be the subject of appeal, and the greater right should not be, is not quite apparent to us. And yet this would be the anomaly

presented to us if we gave the act of 1893 the interpretation contended for by the appellant. We are satisfied that we should not give it that interpretation. We are satisfied that Congress has not given the right of appeal claimed by the appellant in this case.

Holding these views, *we must dismiss the appeal. And it is ordered that the proceedings and decision in the cause be certified to the Commissioner of Patents.*