WALTERS et al. v. WESTERN & A. R. CO. (BROWN, Petitioner).

(Circuit Court, N. D. Georgia. June 26, 1895.)

1. COMPENSATION OF ATTORNEYS — COUNSEL FOR RECEIVERS OF DEFUNCT CORPORATION.

Counsel for the receivers of a defunct corporation are not entitled to a compensation of 5 per cent. on the amount of money which came into the receivers' hands for the benefit of creditors and stockholders, where such amount has not, in any sense, been realized by reason of his services. He is entitled only to a reasonable compensation for the services actually performed.

2. EQUITY PROCEDURE—CONCLUSIVENESS OF MASTER'S REPORT.

Where receivers employed counsel under an agreement that his compensation should be determined by a master in chancery under the supervision of the court, and a reference was accordingly had and acquiesced in, with directions, not merely to take testimony, but to determine the amount of compensation, *held*, that the master's report must be accepted by the court, in the absence of evidence of bias or clear mistake.

This was a petition filed by Julius L. Brown, in the case of W. T. Walters and others against the Western & Atlantic Railroad Company, to recover his compensation as counsel for the receivers of the defendant company. Heard on exceptions by the petitioner to the report of a special master.

Julius L. Brown (with Bishop & Andrews), pro se.
Jackson & Leftwich and Payne & Tye, contra.

NEWMAN, District Judge. This is an application by Julius L. Brown, Esq., for compensation as counsel for complainants in the above-stated case, and also as counsel for the receivers appointed therein. The matter was referred to Mr. John T. Pendleton as

special master, and he has reported for Mr. Brown an allowance of $10,000 as complainants' solicitor, and an additional amount of $10,000 as counsel for the receivers; the latter subject to a reduction of $2,500 on account of retainers received from the company whose assets are being administered, prior to the appointment of the receivers. To this report exceptions have been filed by Mr. Brown. The exceptions all go to the correctness of the amount allowed him as complainants' solicitor and as receivers' counsel.

On the 27th day of December, 1890, the charter of the Western & Atlantic Railroad, a corporation which has been operating the road of that name and the property of the state of Georgia for the period of 20 years, expired. A few days prior to the expiration of the charter, Hon. Joseph E. Brown and Major E. B. Stahlman were appointed receivers by the Hon. Don A. Pardee, circuit judge. The bill was filed by certain shareholders, the allegations in the bill showing the expiration of the charter, the fact that considerable assets were on hand to be distributed between the creditors and the shareholders, and the necessity for receivers of the court to hold the same until these assets could be administered. Mr. Julius L. Brown was counsel for the complainants in this bill. He prepared it and obtained the appointment of the receivers, and has represented the case for the complainants ever since. He has also acted, since their appointment, as counsel for the receivers.

The first matter for consideration is that of the compensation of Mr. Brown out of this fund as counsel for complainants. He claims $35,000, alleging that there has been brought into the hands of the receivers something over $700,000, and that he should have what is about 5 per cent. of that amount for bringing the fund into court. It is denied on the part of counsel representing Receiver E. B. Stahlman (Hon. Joseph E. Brown having died), and by counsel representing the shareholders, that the premises upon which Mr. Brown bases this claim are correct. That is to say, they deny that any fund has been brought into court by this proceeding in the sense in which that expression is used when allowing counsel compensation for such services. The facts as to this issue seem to be about as follows: There was on hand, in cash and cash items, at the time of the appointment of the receivers, something over $300,000. The company set up a claim against the state of Georgia for betterments to the road during the period of its lease, and recovered from the state $99,000 on this ground. Mr. Brown and two other members of the bar received for this service $10,000, Mr. Brown having received as his proportion $4,442, according to his testimony in this investigation. Part of this was paid by the company and part by the receivers. This sum made the amount in the receivers' hands approximate $400,000, to which was added the amount received from the sale of the rolling stock and traffic balances from other railroads, and other minor matters, which made a sufficient sum to aggregate a little over $700,000 in the receivers' hands. A comparatively small amount collected from the sureties of a defaulting agent is the only amount, unless it be some trivial matter which has escaped attention, collected through the special efforts of coun-

sel, except the amount for betterments, which, as stated, was paid for by special contract with Mr. Brown and his associates. The effect of the finding of the master, while he does not expressly pass on the question, is that this fund was not brought into court by counsel for complainants, and that counsel is not entitled to compensation as upon a per cent. basis for the fund which the receivers had in their possession. He finds that he is entitled to $10,000 for his services as counsel for complainants. There is no ground whatever for differing with the special master as to the conclusion which he has reached on this subject. No fund was brought into court by the aid of complainants' counsel in any fair sense, except as to the betterments claim, for which he has been compensated. Two gentlemen of the ablest character were appointed as receivers, who were thoroughly competent to manage this business in every respect. One of them was ex-Senator Brown, a man of national reputation for ability; the other, Major Stahlman, a railroad man of large experience and great ability. These gentlemen had able clerical assistance, in their office as receivers, to aid in winding up the affairs of the company. The receivers, with the aid of this clerical force, reduced the outstanding obligations of the company to cash, according to the testimony of Major Stahlman, without the slightest difficulty. If the applicant, Mr. Brown, was right in his assumption that by his efforts this fund was brought into court, there would be reasonable ground for the payment of additional compensation; but I am forced to agree with the special master in the conclusion that he has evidently reached on this subject, and which he must necessarily have reached in order to have found as he did.

For compensation as counsel for the receivers Mr. Brown claims $20,000. The special master found for him $10,000, to be credited with the sum of $2,500 on account of retainers which he had received from the company in much of the litigation before its dissolution. The evidence heard by the special master on this question, as well as on the question of Mr. Brown's compensation as complainants' solicitor, is exceedingly voluminous. The evidence as reported to the court makes a volume of 850-odd pages of closely typewritten matter. Twenty-eight members of the bar were examined as witnesses. Sixteen of this number were witnesses on behalf of Mr. Brown, and twelve for the adverse side. They differ widely in their testimony as to the amount to which Mr. Brown is entitled. Some of them testify to the full amount claimed by him, both as counsel for the complainants and the receivers,—$55,000 in all. Some of them—a number of them—testified to a lesser amount. Most of those offered by the receivers and shareholders testified to an amount approximating that found by the special master. Many gentlemen of high character and standing at the bar were examined on both sides. One principal witness on behalf of the receivers and shareholders was the ex-chief justice of the supreme court of this state, Hon. Logan E. Bleckley. Judge Bleckley was carried, by the examination and cross-examination of counsel, through every branch of the litigation to which the receivers were parties in winding up the affairs of the company, and testified in reference to nearly every case—probably

as to every important one—against the receivers. He gave his evidence in detail and with particularity. His testimony, in round numbers, taking the services of Mr. Brown as complainants' solicitor and for the receivers together, fixes about the amount reported in Mr. Brown's favor by the special master. He gives something more, perhaps, as complainants' solicitor, and something less as receivers' counsel, but the aggregate varies very little from the amount the master reported. Ex-Judges H. B. Tompkins, George Hillyer, and W. R. Hammond were also sworn as witnesses; the former on behalf of Mr. Brown, the two latter on behalf of the receivers and shareholders. They vary materially as to the value of Mr. Brown's services, as do the other members of the bar who testified for the respective parties. Of course, all these gentlemen have testified honestly, and it is simply a difference between lawyers as to the value of services rendered by Mr. Brown. Some reconciliation in the testimony of all these witnesses may be effected by an examination of the hypothetical cases put to them by counsel. For example, upon the matter of Mr. Brown's compensation as complainants' solicitor, the question put by his counsel to the witnesses assumed that by his efforts the entire fund was brought into court and conserved for the benefit of the creditors and shareholders, amounting to $700,000, and the answers of the witnesses to this, who were offered in his behalf, vary from $20,000 to $35,000. When the opposing theory or hypothesis, which assumed the fund to be in no danger, etc., was put to them by counsel for the receivers and shareholders, they usually reduced this amount very largely. But, even reconciling the testimony somewhat in this way, there is still decided conflict left as to the amount which Mr. Brown should be allowed as fair compensation for his services. The special master has allowed him the amount stated, and the question now is, what weight shall be attached to his report? This subject has been discussed in the argument before the court. It is claimed, as I understand it, on behalf of Mr. Brown, that the report of the master is only advisory to the court; and, on the other hand, that it is such a report as should be given the highest weight, and only set aside when clearly and manifestly erroneous. There are references to masters in which there may be both classes of findings, according to the decisions of the supreme court. There are references which are made by the court for the purpose of obtaining data, or for an accounting, which are merely advisory. There are references, on the other hand, the report in which should be interfered with with great reluctance. The latter class of references are by consent. Now, in the present case, counsel in open court agreed to a reference of this matter to a special master. There was some little discussion as to who should be the special master, but both parties acquiesced in the appointment of Mr. John T. Pendleton, who was subsequently named by the court as special master in the order of reference. Besides this, it appears from the testimony that the agreement between Mr. Brown and the receivers was that this compensation should be fixed by a master in chancery, under the supervision of the court. An order to this effect was entered on the minutes of the receivers at the time he was employed.

In the case of Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, the second headnote is in these words:

"When the parties consent to the reference of a case to a master or other officer to hear and decide all the issues therein, both of fact and of law, and such reference is entered as a rule of court, it is the submission of the controversy to a special tribunal, selected by the parties, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law; and its determinations are not subject to be set aside and disregarded at the discretion of the court."

The last case I find on this subject in the supreme court reports is the case of Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237. In the opinion of the court, by Mr. Justice Brown, the following language is used:

"As the case was referred by the court to a master to report, not the evidence merely, but the facts of the case, and his conclusions of law thereon, we think that his finding, so far as it involves questions of fact, is attended by a presumption of correctness similar to that in the case of a finding by a referee, the special verdict of a jury, the findings of a circuit court in a case tried by the court under Rev. St. § 649, or in an admiralty cause appealed to this court. In neither of these is the finding absolutely conclusive, as if there be no testimony tending to support it; but so far as it depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable. Wiscart v. D'Auchy, 3 Dall. 321; Bond v. Brown, 12 How. 254; Graham v. Bayne, 18 How. 60, 62; Norris v. Jackson, 9 Wall. 125; Insurance Co. v. Folsom, 18 Wall. 237, 249; The Abbottsford, 98 U. S. 440.

"The question of the conclusiveness of findings by a master in chancery under a similar order was directly passed upon in Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, in which a distinction is drawn between the findings of a master under the usual order to take and report testimony, and his findings when the case is referred to him by consent of parties, as in this case. While it was held that the court could not, of its motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers, yet, where the parties select and agree upon a special tribunal for the settlement of the controversy, there is no reason why the decision of such tribunal, with respect to the facts, should be treated as of less weight than that of the court itself, where the parties expressly waive a jury, or the law declares that the appellate court shall act upon the finding of a subordinate court. 'Its findings,' said the court, 'like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise.' As the reference in this case was by consent to find the facts, we think the rule in Kimberly v. Arms applies; and, as there is nothing to show that the findings of fact were unsupported by the evidence, we think they must be treated as conclusive. To same effect are Crawford v. Neal, 144 U. S. 585, 596, 12 Sup. Ct. 759; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821."

The case at bar was not referred to Mr. Pendleton by the court for the purpose of merely taking testimony and reporting that testimony to the court, but, by the terms of the order, the amount of compensation to be paid to Mr. Brown was referred to his determination. It is true that there was no written stipulation consenting to a reference to a master, but the intention clearly was and the consent was that the special master should hear evidence, investigate the matter fully, and fix the amount, subject to the supervision of the court. If the court should undertake to fix any

other amount than that reported by the special master, it would result in trying the case all over again on the testimony taken by the special master. The amount found by the special master is abundantly sustained by the evidence. It is certainly true that under the evidence he might have found otherwise, but he has decided to give greater weight to the testimony which approximates and favors the amount reported. As before stated, nearly all of the witnesses who were examined before the special master had hypothetical cases put to them. Counsel on either side assumed in their questions a certain amount and character of service as rendered by Mr. Brown. The witnesses were examined and cross-examined in this way. The special master heard all these questions, observed the character of the hypothetical cases put before the witnesses, and noticed how far these hypothetical cases were supported by the real facts in the case. That the special master is able, faithful, and diligent there can be no question. That he was without bias and partiality I think is equally clear. How, then, can the court, in a reference of this sort, whether strictly by consent or merely acquiesced in, undertake to interfere, in the absence of any evidence of bias or clear mistake, with the amount of the report?

There is but one ground on which I feel justified in interfering with the report of the special master. In disposing of the matter of Mr. Brown's compensation as counsel for the receivers, he states thus:

"I find that Mr. Brown did a very considerable amount of work as solicitor for the receivers, and I would fix his compensation for services on this part of the application at $10,000, but for the fact that he had been paid large sums as retainers by the Western & Atlantic Railroad prior to the receivership, and that a good deal of work had been done by him, in the preparation and in the trial of said cases, before the receivership, which preparation and trial of cases prior to the receivership in many instances made the work actually done by him as receivers' solicitor very light, and in other cases much less than it would have required if the cases had been disposed of without the benefit of the work he had done prior to the receivership, and on account of which he had been paid retainers. I have carefully considered the testimony on the subject of these retainers, the cases in which paid, and the amount paid, and find that they ought to diminish the amount of his compensation in the sum of $2,500."

While the soundness of the principle or rule upon which the master comes to this conclusion is not questioned, the correctness of its application to the facts of this case is questioned. There has been serious doubt in my mind all along, since the argument of this case was commenced before the court, as to the justice of making this deduction. In the first place, in view of the amount of the retainers and character of the cases, and the fact that by the dissolution of the corporation and the unconstitutionality of the Martin act, as held by the supreme court of the state, by which a large number of these cases fell, and had no longer any legal status in court, it is not right to make this deduction. In the second place, the effect of it is to reduce the finding in favor of Mr. Brown as counsel for the receivers below the amount it seems to me he is clearly entitled to, under a fair view of the evidence of

the services and the character and duration of the services rendered. To my mind, this part of the finding is manifestly and clearly erroneous, and may be so held in line and in harmony with the foregoing decisions and under the correct rule of law on the subject. I think, therefore, that Mr. Brown is entitled to $10,000 as receivers' counsel, without this deduction. With this change he will receive $10,000 for filing the bill and $10,000 as receivers' counsel, making $20,000 in all for his services in this litigation, without considering the amounts, received by him in the betterments cases and as retainers before the dissolution of the company. With the change suggested, the report is so fully sustained by the evidence that I would not be justified, in my view of the law, in changing it further. Therefore, with the credits which the special master reports should be made on the amount allowed to Mr. Brown, namely, $2,500 on the sum allowed him as complainants' solicitor, and $2,500 on the sum as receivers' counsel, he should receive from the funds now in the hands of the receiver $15,000 in the aggregate for his services to the complainants and to the receivers during this litigation. An order may be taken to this effect. The exceptions will be overruled and the report confirmed, with the modifications suggested.