## JOSEPH L. MOORE *vs.* LENA BOWEN LAYTON, EXECUTRIX.

*Gift Inter Vivos—To Take Effect on Donor's Death—Declaration of Trust.*

Where the owner of securities handed them to his nephew with the statement that he wanted the latter to have them "if anything happened" to him, the uncle, and they were placed by the nephew in a place accessible to both, and the uncle continued to cut the coupons and to collect the interest until his death, there was no perfected gift *inter vivos,* the intention being to provide for a future and conditional, and not a present and completed, transfer of title.                    pp. 247, 248

While no particular form of words is necessary in a declaration of trust, the intention to create a trust should be clearly manifested. **p. 248**

That the owner of securities hands them to his nephew with a statement that the latter is to have them if "anything happens" to him, the uncle, does not show an intention to create a trust for the uncle for life and after his death for the nephew, the uncle continuing to have access to the securities, and to cut the coupons and collect the interest until his death. **p. 249**

*Decided January 21st, 1925.*

Appeal from the Circuit Court for Worcester County (DUER and BAILEY, JJ.)

Action by Lena Bowen Layton, executrix of Everett M. Layton, deceased, against Joseph L. Moore. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, and WALSH, JJ.

*John W. Staton* and *John S. Whaley,* with whom were *Johnson & Johnson* on the brief, for the appellant.

*James E. Ellegood* and *F. Leonard Wailes,* with whom were *William G. Kerbin,* and *Ellegood, Freeny & Wailes* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

Certain United States loan certificates and Liberty Bonds, of the par value of $6,450, transferable by delivery, were replevied in this case from the appellant upon the ground that they belong to the estate of Everett M. Layton, deceased, of whose will the appellee is the executrix. There is no dispute as to the facts. The securities had been owned by Mr. Layton in his lifetime. They had been kept by him in the Bishopville Bank, of which he was part owner and

cashier. The appellant was his nephew, and was associated with him in the operation of the bank. A year or more before his death Mr. Layton, having resigned as cashier and having been succeeded by the appellant in that position, took the bonds and certificates in question from his private box in the safe of the bank and handed them to the appellant with the statement that he should put them where he (the appellant) would know where to find them, and that "if anything happened to him" (Layton), he wanted the appellant to have the securities. They were placed at once in a vacant and unmarked pigeon hole by the appellant, who said to Mr. Layton, "here they are whenever you want to see them, clip the coupons or anything else." The pigeon hole was in the vault containing the safe from which the securities had been removed. They remained in the pigeon hole until Mr. Layton's death, except when he took them out periodically for the purpose of cutting the coupons as the interest became payable, and except also when the appellant inspected them occasionally. Mr. Layton continued to have free access to the vault after his resignation as cashier, and the right to collect the coupons and collect the interest was exercised by him alone until the time of his death. The facts we have stated were proved by the appellant's own declarations and testimony.

Instructions were granted by the trial court to the effect that if the jury found the facts to which we have referred, their verdict should be in favor of the plaintiff for the securities described in the writ of replevin. The court refused a prayer, offered by the defendant, proposing that the case be withdrawn from the jury, and also one submitting the question whether a trust of the securities was created for the benefit of Mr. Layton during his life and for the defendant in remainder. Exceptions were taken by the defendant to the rulings on the prayers and on several questions relating to the admissibility of evidence. The plaintiff obtained a verdict and judgment for the property sought to be recovered, and the defendant has appealed.

It is rather upon the theory of a trust than upon that of a gift *inter vivos* that the defense in this case relies. Clearly the transaction under inquiry did not involve a perfected gift. It was intended to provide for a future and conditional, and not for a present and completed, transfer of title. The donation was to be effective only if and when "anything happened" to the prospective donor. The evident purpose was that the defendant's right to "have" the securities should depend upon the contingency of his surviving the owner. Unless and until that event occurred, Mr. Layton's proprietary interest in the bonds and certificates was to continue. His dominion over them was exercised as fully after as before they were removed from the private box to the pigeon hole. It was simply to enable the defendant to "find" and "have" them after Mr. Layton's death that they were placed in another receptacle to which both could have access. In the meantime he had the continuing opportunity to dispose of the securities at his discretion.

In referring to the necessary elements of an effective gift *inter vivos,* Judge Alvey said in *Taylor v. Henry,* 48 Md. 550, and Chief Judge Boyd repeated in *Howard v. Hobbs.* 125 Md. 640: "To make such gift perfect and complete, there must be an actual transfer of all right and dominion over the thing given by the donor, and an acceptance by the donee, or some competent person for him; and it is essential, to the validity of such gift, that it should go into effect; that is, transfer the property at once and completely, for if it has reference to a future time when it is to operate as a transfer, it is but a promise without consideration, and cannot be enforced, either at law or in equity. Until the gift is thus made perfect, a *locus penitentiae* remains, and the owner may make any other disposition of the property that he may think proper."

In a case where a husband rented a safe deposit box, containing his securities, in the joint names of himself and his wife, and gave her one of the keys, Chief Judge McSherry, discussing the question whether a tenancy by the entireties

was thus created by gift, said that such a tenancy "may have
its origin in a voluntary gift by the husband, but, like any
other gift, to be valid and effective it must possess certain
well-defined and essential qualities. There can be no gift
which the law will recognize where there is reserved to the
donor, either expressly or as a result of the circumstances and
conditions attending the transaction, a power of revocation
or a dominion over the subject of the gift. There must be no
*locus penitentiae,* and there is always a *locus penitentiae*
when the supposed donor may at any moment undo what he
has done. *Brewer v. Bowersox,* 92 Md. 570; *Whalen v. Mil-
holland,* 89 Md. 199. * * * The fact that the wife had a key
to the box did not place any restriction on the husband's
control over the property contained in the box, and it cannot
be asserted as a legal postulate that a mere right of *access* to
the box on the part of the wife during the husband's life
changed the title to the contents of the box. Conceding that
he designed to make a gift to his wife of the securities then
in the box, still if he was free after March the thirteenth,
1899, to do what he pleased with those securities, notwith-
standing the terms of the renting, then there was a *locus
penitentia*e reserved, and consequently there was no per-
fected gift, even though in point of fact he did not attempt
to exercise the dominion which he retained. It is the *exist-
ence* and not the *exercise* of the *locus penitentiae* which de-
feats a gift *inter vivos."* In re *Bauernschmidt's Estate,* 97
Md. 59, 61.

The alternative theory in this case, that a trust of the
securities was created for the benefit of Mr. Layton for life,
and after his death for the defendant, is not sustained by
the evidence. While no particular form of words is neces-
sary in a declaration of trust, the intention to create a trust
should be clearly manifested. *Pearre v. Grossnickle,* 139
Md. 274; *Geoghan v. Smith,* 133 Md. 535; *Austin v. Cen-
tral Savings Bank,* 126 Md. 144. In *Mathias v. Fowler,* 124
Md. 665, it was said that "in order to establish a declara-
tion of trust there must be clear evidence of an intention to

transfer a *present* interest to the *cestui que trust,* and this requirement, under the decisions in this State, is not gratified by evidence which merely shows that a depositor intended the fund to belong, after his death, to another, otherwise every deposit in the name of the depositor and another and the survivor would amount to a declaration of trust in favor of the survivor."

In this case there is no indication of any design by Mr. Layton to create a trust. No present interest was transferred, and no fiduciary relation was defined by word or conduct. The only apparent purpose was to provide for a gift which was not to be effective until the donor's death, and that object could not be validly accomplished by the method adopted.

The rulings on the prayers were in accord with the principles of law which we have found applicable to the facts proved at the trial.

No reference is made in the appellant's brief to the exceptions to rulings on the admissibility of evidence, and in none of them have we found any error.

*Judgment affirmed, with costs.*