OPINION. Hill, Judge-. The primary issue here presented for determination involves the propriety of including the value of certain property as part of petitioner’s gross income for the year 1940. In that year petitioner became unconditionally entitled to some stocks, bonds, and money following the death of Charles L. Roy, such property having a net value as of the death date of $40,939.27. Petitioner contends that the property was received by her through gift or bequest, and, hence, is to be excluded from gross income under the provisions of section 22 (b) (3) of the Internal Revenue Code. Respondent, on the other hand, takes the position that such property was transferred to petitioner in fulfillment of an oral agreement in 1935 between petitioner and Charles L. Roy that she should have the property in return for her services in caring for Roy as long as he lived. Consequently, respondent asserts, the property so transferred is taxable as compensation for services. We can not agree that respondent’s premise demands the result he claims. Section 22 (a) of the Internal Revenue Code defines gross income as including gains, profits, and income derived from salaries, wages, or compensation for personal services. No controversy arises regarding the construction or inclusiveness of this provision. The crux of the problem, as we see it, is whether the within transfers to petitioner are exempt from taxation by reason of the express provisions of section 22 (b) (3) of the Internal Revenue Code, which reads as follows: SEC. 22. GROSS INCOME. ******* (b) Exclusions from Gross Income. — The following items shall not be included in gross income and shall be exempt from taxation under this chapter: ****** * (3) Gifts, Bequests, and Devises. — The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income). Our first inquiry concerns the meaning of the word “bequest.” In the case of United States v. Merriam, 263 U. S. 179, the Supreme Court had before it the question of whether or not a bequest to executors in lieu of all compensation and commissions was exempt from taxation. While disclaiming an intent to decide whether the definition of “bequest” as used in the statutory provision of a prior revenue act analogous to section 22 (b) (3) included an amount expressly left as compensation for service actually performed, the Court did state as follows: * * * The word “bequest” is commonly defined as a gift of personal property by will; but it is not necessarily confined to a gratuity. Thus, it was held in Orton v. Orton, 3 Keyes (N. Y.) 486, that a bequest of personal property, though made in lieu of dower, was, nevertheless, a legacy, the court saying: “Every bequest of personal property is a legacy, including as well those made in lieu of dower, and in satisfaction of an indebtedness, as those which are wholly gratuities. The circumstance whether gratuitous or not, does not enter into consideration in the definition. . . . And when it is said that a legacy is a gift of chattels, the word is not limited in its meaning to a gratuity, but has the more extended signification; the primary one given by Worcester in his dictionary, ‘a thing given, either as a gratuity or as a recompense.’ " And further: The word “bequest” having the judicially settled meaning which we have stated, we must presume it was used in that sense by Congress. Kepner v. United States, 195 U. S. 100, 124; The Abbotsford, 98 U. S. 440, 444. On behalf of the Government it is urged that taxation is-a practical matter and concerns itself with the substance of the thing upon which the tax is imposed rather than with legal forms or expressions. But in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear Import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer. * * * In that case the bequest was held to be exempt from taxation. Here Charles L. Roy died leaving a will and codicil which were admitted to probate in Dallas County, Texas. The codicil contained a provision which reads as follows: In appreciation of the many years of loyal service and faithful care rendered me by Miss Ethel M. McDonald registered nurse, I give and bequeath all of the rest, residue and remainder of my property. Miss McDonald has cheered, comforted and encouraged me through sickness, sorrows, disappointments and discouragements. She has brought me much happiness in my old age. I am sure that she has prolonged the years of my life with her cheerful, professional and sympathetic care. This is the pertinent clause of the two instruments in so far as the property in question could be affected. As in the case of the clause under consideration in the Merriam case, the property bequeathed is not expressly left as compensation for service actually performed. True, the testament states that the bequest is made “In appreciation of the many years of loyal service and faithful care * * but this is not to be confused with the payment of a consideration in exchange for such service and care. In Bogardus v. Commissioner, 302 U. S. 34, which case involved the distinction between a gift and additional compensation for services, the Supreme Court said: Some stress is laid on the recital to the effect that the bounty is bestowed in recognition of past loyal services. But this recital amounts to nothing more than the acknowledgement of an historic fact as a reason for making the gifts. A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient. * * * We think the above words are equally applicable to a bequest. A bequest is none the less a bequest because inspired by gratitude for past faithful services and there certainly can be no question of decedent’s gratitude in this case, in view of his effusive expressions in petitioner’s regard. The clause in question clearly falls within the definition of a bequest repeated with approval in the Merriam case. It next becomes necessary to ascertain if the property which the respondent seeks to tax did in fact pass to petitioner under decedent’s will and codicil. Since the will and codicil were actually admitted to probate and the estate administered, the property did so pass unless decedent had disposed of it prior to his death or unless it can be said to have been acquired pursuant to the alleged oral agreement. Surely, the circumstance that it was not included in the estate inventory would not be decisive of the actualities of the transfer and would not remove from the estate property actually owned by the decedent at his death. Both parties placed particular emphasis on alternate theories which are grounded on the assumption that title to the property in question passed from Charles L. Roy to petitioner at the former’s death under the terms of an oral agreement between him and petitioner in 1935. Of course, the parties are at odds as to the legal effect of the asserted transfers. Petitioner urges under this alternative contention that the property became hers by virtue of a gift inter vivos conditioned upon her surviving Roy and upon its existence in the original or a substituted form at that time. Respondent argues that the property passed to petitioner at Roy’s death in payment of his obligation under the terms of the alleged oral contract. If either of these contentions can be sustained the property could not also pass by bequest. Respondent relies principally upon testimony, admitted here without objection, previously given by petitioner and her mother at a trial in the District Court of Dallas County, Texas. Presumably this testimony was offered as embracing quasi-admissions, attributable to petitioner, contradictory to her testimony in the instant proceeding. An analysis of petitioner’s prior testimony, however, discloses that, rather than comprising a relation of facts from which the Court might draw conclusions of law, it consists largely of legal conclusions themselves. The questions of what constitutes a payment and what constitutes an agreement are peculiarly ones of law. In arriving at a decision on these questions we are not concluded by testimony of the petitioner in a prior and different proceeding which allegedly or in fact is contradictory to her testimony here. Such previous testimony to the extent, if any, that it contradicts her testimony as to material facts here is to be considered only in determining whether in the instant proceeding petitioner testified truthfully. In view of our decision that such testimony in the prior proceeding was largely a statement of petitioner’s conclusions as to the legal effect of the transaction between her and decedent, and also in view of all evidence here adduced, we are unable to find that it materially discredits her testimony in the instant proceeding. Furthermore, the testimony of petitioner’s mother given in the Dallas trial warrants little weight. The circumstances under which Roy made the alleged statements to which she there testified, as well as the fact that the statements are subject to more than one interpretation, prevent us from attaching special significance to them. Petitioner’s theory rests on the fact that the property was actually placed in her name. It proceeds upon the premise that by reason of this circumstance petitioner thereby became the owner of the property. However, the name in which securities are registered is simply an evidentiary factor in ascertaining ownership. Stock is frequently held in the name of a nominee, in which instance the law raises an implied trust whereby the nominal owner is merely a trustee holding a bare legal title. Richards v. Robin, 162 N. Y. S. 12; Gray v. Graham (Conn.), 89 Ttl. 262. The acts of the parties taken as a whole, together with the circumstances surrounding the transactions, compel us to conclude that neither theory under discussion is sustained. Moreover, both theories must fall for the very same reason, to wit, the fact that there was no absolute transfer of the property from Charles L. Roy to petitioner. “A gift is the voluntary, gratuitous, and absolute transfer of property from one person to another, while a payment is the transfer of property absolutely in the performance of an obligation.” (Italics supplied.) American Jurisprudence — Payment, § 3. Whether an apparent change in ownership is one in fact depends, to a large extent, upon the intent of the party from whom the title is claimed to have passed. Thus, among the requirements necessary to constitute a valid gift inter vivos is a clear and unmistakable intention upon the part of the donor to make it. Edson v. Lucas, 40 Fed. (2d) 398; Augustus E. Staley, 41 B. T. A. 752. And a payment does not occur unless the money or property passing from the debtor to the creditor is for the purpose of extinguishing the debt. Bailey v. Commissioner, 103 Fed. (2d) 448; Moses v. United States, 28 Fed. Supp. 817. The conduct of the parties, their acts considered in and of themselves as well as in relation to the happening of other events, and all the circumstances surrounding’ the purported transfers refute the existence of absolute transfers during Charles L. Roy’s life or his intention to make a gift or payment to petitioner at any time prior to his death. For example, the alleged contract is said to have been made in 1935, yet no move was made to transfer the personal property to petitioner until the latter part of 1936, and petitioner in the meantime made no request that such be done. After the stocks and bonds were placed in petitioner’s name, Roy continued to exercise complete and exclusive dominion and control over their disposition, causing some to be sold from time to time and the proceeds reinvested or turned into bank drafts; he at all times had physical access to them; he made full use of the income from the investments less the amounts taken therefrom by petitioner as her current salary plus reimbursement for her living and traveling expenses; and he drew a codicil to his will leaving all his personal estate save $10 to petitioner, in spite of the fact that he was possessed of virtually nothing which had not previously been the subject of a transfer to petitioner’s name, and, seemingly, had no expectation of acquiring additional properties in his own name. On petitioner’s part, she executed separate assignments of the securities to Charles L. Roy at his behest, which instruments were placed with the securities themselves; and at no time did she make an attempt to act in relation to the property except upon Roy’s direction. Moreover, that there was present in Charles L. Roy’s mind a specific purpose in causing his property to be held in petitioner’s name, entirely apart from gift or payment, is amply established by the record. It is clear beyond question that his activities in connection with his property from the latter part of 1936 until his death were motivated by a passionate desire on his part to place what remained of his worldly possessions beyond the reach of his wife. To this end he converted his cash into securities registered in the name of Ethel M. McDonald; subsequently caused them to be held in the name of Mildred E. McDonald, this, obviously, being calculated to further impede the discovery of his assets since petitioner was unknown to Mrs. Roy by that name; transferred the nominal ownership of his remaining securities to petitioner; removed them from California where his wife’s action was pending and in which state judgment against him was thereafter obtained;; retained them in his physical possession; sought legal advice on how he might even more adequately remove them from the possibility of seizure under legal process; and purchased bank drafts payable or endorsed to petitioner, but which were not presented for payment, with practically all the cash he later acquired. The facts and circumstances recited above impel us to conclude that the transfers and transactions in question did not constitute either a gift inter vivos or payment to petitioner. Admittedly, it is not only possible but probable that Roy desired petitioner to have what remained of his personal property after his death and that petitioner expected as much. This is, in fact, what actually occurred. But it did not and could not come to pass as a result of a gift made contingent upon petitioner surviving Roy. Such a gift would be ineffective. Moore v. Layton (Md.), 127 Atl. 756; Gray v. Greer (Ky.), 70 S. W. (2d) 683; Barlow v. Halley, 121 N. Y. S. 708. Gifts reserving title in and enjoyment of the subject property to donor during his lifetime are testamentary in character and void. In re Humphrey's Estate, 181 N. Y. S. 169. Did petitioner acquire the property pursuant to the settlement agreement of November 28, 1940, rather than as legatee under Charles L. Roy’s will and codicil ? It is clear that she did not. As concerns economic benefit to petitioner, the express terms of the agreement provided only that she “shall be and is entitled to any and all rights which she has under and by virtue of the last will and testament and codicil thereto of the said Charles L. Roy, deceased.” Petitioner received nothing under the settlement except the privilege of enjoying her rights relieved of the claims of other parties. She simply retained her position as legatee, taking the property as an acquisition in the devolution of Roy’s estate. In this respect the effect of the settlement was merely to reduce the value of her bequest by the amount she agreed to pay the other parties to the contract in consideration of their covenants. It did not change its character as a bequest. See Charlotte Keller, 41 B. T. A. 478; Lyeth v. Hoey, 305 U. S. 188. We hold that petitioner received the property in question as a bequest within the meaning of section 22 (b) (3) of the Internal Revenue Code and that respondent erred in including its value in petitioner’s gross income for the year 1940. The cases of Hilda Kay, 45 B. T. A. 98, and Cole L. Blease, 16 B. T. A. 972, which respondent contends should lead us to an opposite conclusion, are not in point. In neither was the recipient of the money, which we held in each case as taxable income, a legatee. The above conclusion renders it unnecessary to decide the further question regarding the deductibility of attorney fees and court costs and the date of valuation of the securities. Decision of no deficiency wül be entered.